Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Monday, April 12, 2010 10:34:53 AM

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: | |
| JAMIE ALAN BAILEY | Case No. 09-2564 |
| Debtor. | Chapter 13 |
| | |
| JAMIE ALAN BAILEY | |
| Plaintiff, | |
| v. | Adv. Proc. No. 10-5 |
| SHANNAN DAVANT, and DOUGLAS CORNELIUS, | |
| Defendants. | |

## MEMORANDUM OPINION

Jamie Alan Bailey (the "Debtor") seeks judgment on the pleadings on the grounds that his former spouse, Shannan Davant, and/or her attorney, Douglas Cornelius, have violated the automatic stay of the Bankruptcy Code by failing to affirmatively stop a pre-petition garnishment of his wages.

For the reasons stated herein, the court will grant the motion and set a further hearing on damages.

## I. STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(c), Fed. R. Bankr. P. 7012, "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for a judgment on the pleadings." In reviewing a motion for a judgment on the pleadings, the court "assumes the facts alleged in the relevant

1

pleadings to be true, and . . . draw[s] all reasonable inferences therefrom." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 591 (4th Cir. 2004). Inferences are drawn in favor of the non-moving party. *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002).

## II. BACKGROUND

According to the Answer filed by Ms. Davant and her attorney, she and the Debtor obtained a divorce from the Family Court of Taylor County, West Virginia on April 10, 2009. As part of that proceeding, the Debtor was ordered to buy-out Ms. Davant's share of the equity in the marital home, which was determined to be $27,000. In addition, the Debtor was obligated to pay $15,525 in Ms. Davant's attorney's fees and costs.

By August 5, 2009, the Debtor had not paid the amounts owed, and was to purge himself of the contempt within 60 days.

After the passage of 60 days, the Debtor failed to pay Ms. Davant. On October 27, 2009, on Ms. Davant's instruction, the Taylor County Circuit Clerk issued a Suggestee Execution to effect a garnishment of the Debtor's wages, which was sent to the Debtor's employer. The garnishment was to last one-year from the date of its issuance. The Debtor filed his Chapter 13 bankruptcy petition on November 9, 2009.

On November 10, 2009, the Debtor filed his suggestion of bankruptcy with the Family Court of Taylor County. Consistent with that notice, the Family Court cancelled a pending contempt hearing in observance of the Bankruptcy Code's automatic stay. At that time, Ms. Davant and her attorney had actual notice of the Debtor's bankruptcy filing.

Pursuant to the pre-petition execution issued by the Family Court of Taylor County, the Debtor's employer withheld, for the first time, $575.38 from the Debtor's wages on December 30, 2009, and sent that amount to Ms. Davant in care of her attorney.

On January 4, 2010, the Debtor's attorney sent Ms. Davant's attorney a letter, by facsimile and certified mail, notifying him that the garnishment was a violation of the automatic stay, it was his duty to positively cease all collection activity against the Debtor, and demanding that he return the garnished wages within 7 days – or face legal proceedings for violation of the automatic stay. At the time the facsimile was received by Ms. Davant's attorney's office, he was out of town. On being informed of the facsimile by his secretary, he instructed her to contact the Debtor's attorney, the Taylor County Circuit Court Clerk, and the Debtor's employer in an effort to stop the

2

garnishment. He also instructed that the garnished wages be returned.

This adversary proceeding was filed by the Debtor against Ms. Davant and her attorney on January 14, 2010. At that time, the Debtor's wages had not been returned.

Despite the efforts of Ms. Davant's attorney to stop the garnishment, a second garnishment check was received by Ms. Davant's attorney on January 25, 2010.[1]

After receipt of the second garnishment check, Ms. Davant's attorney contacted the Taylor County Circuit Court Clerk's Office and sent it a formal motion to release the Suggestee Execution. He also sent the release to the Debtor's employer. In addition, Ms. Davant's attorney wrote a separate letter to the Debtor's employer, dated January 27, 2010, enclosing the two garnishment checks to be voided, with instructions to restore the money to the Debtor.[2]

### III. DISCUSSION

In his motion for a judgment on the pleadings, the Debtor states that Ms. Davant and her attorney have admitted to violating the automatic stay in their Answer; thus, in his view, the only issue for the court is one of damages.

Ms. Davant and her attorney respond that any violation of the automatic stay by them was not willful. Also, Ms. Davant's attorney states that all judgments in this case were obtained in favor of Ms. Davant and he is not a creditor of the Debtor.

**A.    Willful Violation of the Automatic Stay**

As an initial defense to the Debtor's motion, Ms. Davant and her attorney state that any violation of the automatic stay in this case was not willful, as required by 11 U.S.C. § 362(k). In their view, the Debtor had already notified his employer that he had filed bankruptcy, and the Debtor's employer was sent a copy of the order staying the contempt hearing in the family court due to the Debtor's bankruptcy filings. Also, on January 4, 2010, a secretary for Ms. Davant's

---

[1] The Complaint filed by the Debtor for violation of the automatic stay was filed on January 14, 2010. In Paragraph 18 of the Complaint, the Debtor inexplicably references a second garnishment of his wages that occurred on January 15, 2010, which Ms. Davant's attorney admitted to receiving on January 25, 2010.

[2] In his motion for judgment on the pleadings, the Debtor states that a third garnishment of his wages occurred on January 29, 2010. As of the date of this Memorandum Opinion, the Debtor has not sought to amend his complaint.

3

attorney left a voice message with the Debtor's employer asking that it cease honoring the garnishment.

The automatic stay of the Bankruptcy Code goes into effect when a case is filed. 11 U.S.C. § 362(a). Among other things, the automatic stay prevents "the continuation . . . of a . . . proceeding against the debtor that was . . . commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case . . . ." § 362(a)(1). The stay also prevents "the enforcement against the debtor, or against property of the estate, of a judgment obtained before the commencement of the case." § 362(a)(2). In addition to protecting the relative position of creditors, the purpose of the automatic stay "is to shield the debtor from financial pressure during the pendency of the bankruptcy proceeding." *Winters By & Through McMahon v. George Mason Bank*, 94 F.3d 130, 133 (4th Cir. 1996); *see also Williford v. Armstrong World Indus.*, 715 F.2d 124, 127 (4th Cir. 1983) (stating that the automatic stay "'stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.'") (citation omitted). When a creditor willfully violates the automatic stay, the debtor has a cause of action for actual damages, costs, attorney fees, and in appropriate circumstances, punitive damages. 11 U.S.C. § 362(k).

A "willful" violation of the automatic stay occurs when "'the creditor acts deliberately with knowledge of the bankruptcy petition.'" *Robb v. Nat'l Tree Co. (In re Robb)*, 399 B.R. 171, 175 (Bankr. N.D.W. Va. 2008) (citation omitted); *see also Cooper v. Shaw's Express (In re Bulldog Trucking)*, No. 94-1936, 1995 U.S. App. LEXIS 29654 at *9-10 (4th Cir. Oct. 19, 1995) ("'A 'willful violation' does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional.'") (citation omitted).

In instances like this one, where a creditor fails to stop the continuation of a pre-petition garnishment, courts have held that the creditor willfully violates the automatic stay by failing to affirmatively act to release the garnishment. *E.g.*, *Spagner v. Latham, Stall, Wagner, Steel & Lehman (In re Spagner)*, CIV-04-508, 2005 U.S. Dist. LEXIS 46883 (W.D. Okla. Aug. 15, 2005) (stating that the creditor's failure to affirmatively act to stop a garnishment after receiving knowledge of the bankruptcy filing was a willful violation of the stay); *Roche v. Pep Boys, Inc. (In*

4

*re Roche)*, 361 B.R. 615, 622 (Bankr. N.D. Ga. 2005) (same); *In re Johnson*, 253 B.R. 857 (Bankr. S.D. Ohio 2000) (same). As aptly stated by one bankruptcy court:

> In a garnishment proceeding, no amounts should be seized or withheld from the Debtor's wages after the filing of a bankruptcy petition. It is clear beyond all doubt that garnishing creditors are required to take all necessary action to release their garnishments in order to implement the automatic stay, upon receiving notice of a bankruptcy filing. This is true even if the garnishment process became effective prior to the date of the bankruptcy filing and did not, at the time it first became effective, violate the automatic stay. Indeed, the creditor must not only cease from taking any affirmative action which would violate the automatic stay, it must also take all necessary affirmative action to stop proceedings which are in violation of the automatic stay.

*In re Briskey*, 258 B.R. 473, 477 (Bankr. N.D. Ala. 2001).

In this case, Ms. Davant had, legitimately, instituted a pre-petition garnishment proceeding with regard to the Debtor's wages. On November 10, 2009, the Debtor filed a suggestion of bankruptcy in the Family Court of Taylor County. At that time, Ms. Davant and her counsel had knowledge of the Debtor's bankruptcy filing. In addition, both Ms. Davant and her counsel were mailed the Notice of Chapter 13 Case issued by the bankruptcy clerk on November 10, 2009. That notice provides common examples of prohibited collection activity, and specifically includes garnishing a debtor's wages as a prohibited act. Having prepared the Suggestee Execution, Ms. Davant's attorney knew that it had a duration of one-year from its issuance on October 27, 2009. Moreover, before instituting this action for violation of the automatic stay, Debtor's counsel notified Ms. Davant's attorney on January 4, 2010, that the Debtor's wages had been garnished, and to avoid litigation, the garnishment was to be stopped and the money returned in 7 days.[3]

Although on vacation, Ms. Davant's attorney did instruct his office to contact the Taylor County Circuit Court's Clerk's Office and the Debtor's employer to stop the garnishment. Ms.

---

[3] *See Robb*, 399 B.R. at 176 n.3 (stating that "there is no 'blanket rule' that all debtors must first notify creditors of stay or discharge violations before filing a cause of action, but . . . 'such a requirement serves to notify the creditor of its improper behavior and serves to prevent needless litigation.'") (citation omitted); *Briskey*, 258 B.R. at 478 ("When a garnishment proceeding is pending at the time a bankruptcy petition is filed, the debtor or his counsel should make a reasonable attempt to communicate with the creditor by giving notice of the bankruptcy filings and requesting that action be taken to release the garnishment.").

5

Davant's attorney, however, did not timely prepare any motion or order for the Taylor County Court to enter that would stop the garnishment of the Debtor's wages. Also, Ms. Davant's attorney did not return the garnished wages to the Debtor's employer until putting the checks in the mail on January 27, 2010.

In sum, Ms. Davant and her attorney had notice of the Debtor's bankruptcy petition on November 10, 2009. Yet, neither Ms. Davant nor her attorney took any affirmative steps to release Ms. Davant's pre-petition garnishment of the Debtor's wages. Waiting for the Debtor's letter on January 4, 2010, is inexcusable.[4] In a garnishment proceeding, the creditor "is in the driver's seat and very much controls what is done thereafter if it chooses." *In re Elder*, 12 B.R. 491, 494 (Bankr. M.D. Ga. 1981). To honor the automatic stay of the Bankruptcy Code, and to stay the "continuation" of an action, a garnishing creditor "cannot choose to do nothing an pass the buck to the garnishee or the court in which the garnishment is filed to effectuate the stay." *Id.* A creditor must affirmatively act to prevent further garnishment. *Id.*

Therefore, the court finds that, based on the pleadings in this case, Ms. Davant and her

---

[4] *In Robb*, 399 B.R. at 176, this court held that, on summary judgment, there was a genuine issue of material fact with regard to whether National Tree willfully violated the automatic stay by its failure to affirmatively act to release a judgment lien.

This case is different. Here, Ms. Davant and her attorney knew as early as November 10, 2009, that the Debtor filed bankruptcy and they were both mailed a letter from the Clerk's Office informing them that continued garnishment proceedings were generally prohibited by the automatic stay. In *Robb*, the debtor failed to notify National Tree of its bankruptcy filing and the judgment lien was recorded – and continued – in unwitting violation of the automatic stay. Here, Ms. Davant and her attorney had instituted a garnishment of the Debtor's wages – an act that requires immediate attention to prevent further harm to the Debtor. The judgment lien in *Robb* affected the debtor's interest in real property, and, therefore, did not present the same level of immediate danger of harassment and financial pressure. Here, Ms. Davant and her attorney delayed in terminating the garnishment and in returning the Debtor's garnished wages. In *Robb*, when the debtor did inform National Tree of the debtor's bankruptcy filing and stay violation, it released its lien. *Id.* Here, the Debtor's attorney sent Ms. Davant's attorney a letter giving him a period of time to terminate the garnishment and return the Debtor's wages or face legal action. In *Robb* the debtor failed to send National Tree a similar mitigation letter.

Accordingly, the creditors' knowledge of the bankruptcy filings, the level of immediate financial pressure on the debtors, the acts of the creditors following their knowledge of the stay violations, and the acts of the debtors' attorneys in informing the creditors of the wrongful acts all make *Robb* too factually distinct from this case to be controlling.

6

attorney had knowledge of the automatic stay and willfully violated the stay by failing to take timely and effective affirmative acts to release the garnishment on the Debtor's wages, and to restore to the Debtor his garnished wages.

**B.     Damages**

Based on the pleadings, the Debtor has established liability, but has not had the opportunity to establish his damages. Therefore, the court will set a further hearing at which time the Debtor can present the court with such evidence.

**C.     Holding Ms. Davant's Attorney Personally Liable for Stay Violations**

The Debtor filed this adversary proceeding against both his former spouse, Ms. Davant, and her attorney, Mr. Cornelius. The Debtor seeks to hold both jointly and severally liable.

Mr. Cornelius contends that he cannot be liable for a violation of the automatic stay because the underlying judgment, including his award of attorney's fees, was in favor of Ms. Davant and no judgment was ever payable by the Debtor directly to Mr. Cornelius.

No requirement exists that an attorney must also be a creditor for that attorney to be held liable for stay violations. *E.g.*, *In re Crawford*, 388 B.R. 506 (Bankr. S.D.N.Y. 2008) (agent held liable along with principal for willful stay violation); *In re Johnson*, 253 B.R. 857, 861 (Bankr. S.D. Ohio 2000) ("Courts have imposed joint and several liability against creditors and their counsel for willful stay violations."); *Vazquez v. Sears, Roebuck & Co. (In re Vazquez)*, 221 B.R. 222, 231 (Bankr. N.D. Ill. 1998) ("A creditor and its attorney are jointly and severally liable for their violations of the discharge injunction because under general principles of agency law, an agent whose tortious conduct renders the principal liable is also liable for his own tortious acts."); *In re Baker*, 183 B.R. 30, 33 (Bankr. D.R.I. 1995) ("Norwest and its attorney are determined to be jointly and severally liable for the legal fees incurred herein by the Debtors [in response to a stay violation]."); *Restatement (Third) of Agency* § 7.01 (2008) ("An agent is subject to liability to a third party harmed by the agent's tortious conduct . . . an actor remains subject to liability although the actor acts as an agent or an employee . . . .").

Mr. Cornelius violated the automatic stay while acting on behalf of Ms. Davant. Consequently, he is properly named as a party defendant to this adversary proceeding.

### IV. CONCLUSION

For the above stated reasons, the court will enter a separate order that grants the Debtor's

7

motion for a judgment on the pleadings and holds Ms. Davant and Mr. Cornelius jointly and severally liable for violating the automatic stay. The court will set a further hearing on the extent of the Debtor's recoverable damages.